# HUTCHINSON ICE CREAM COMPANY ET AL. *v.* STATE OF IOWA.[1]

## ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

# CROWL *v.* COMMONWEALTH OF PENNSYLVANIA.

## ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

Nos. 40, 50.   Argued November 13, 1916.—Decided December 4, 1916.

Laws forbidding the sale, offering for sale, etc., as "Ice Cream" of any article not containing butter-fat in reasonable proportion fall fairly within the state police power.

The fact that the name "Ice Cream," as commonly used, includes many compounds which are entirely wholesome yet contain no cream or butter-fat, does not render such legislation arbitrary or unreasonable, but tends rather to support it as serving to prevent the public from being misled in the purchase of a food article of general consumption.

Whether the State may prohibit the sale of wholesome products if the public welfare seems to require such action is a question not involved in these cases.

168 Iowa, 1; 245 Pa. St. 554, affirmed.

THE case is stated in the opinion.

*Mr. Walter Jeffreys Carlin* and *Mr. R. L. Parrish* for plaintiffs in error:

While the police power may be exercised to protect the public health, morals, safety and general welfare, it may

---

[1] Pursuant to stipulation, the case of *Sanders Ice Cream Co. et al. v. State of Iowa*, No. 39, October Term, 1916, in error to the Supreme Court of the State of Iowa, was argued on the record in the *Hutchinson Case, supra,* and disposed of in the same way.

not destroy private rights arbitrarily; and whether its exercise in a given case is valid or not is a judicial question.

"Ice Cream" is a generic term, embracing a large number and variety of products, many of which, though entirely wholesome, do not contain either cream of milk or butter-fat. The term, as generally used and understood, does not imply the presence of such ingredients in definite proportions or at all. The product, thus broadly defined, is not an imitation or substitute for any other confection or food, but an admittedly wholesome article passing honestly by its own name.

The standard enacted is purely arbitrary. The legislature selects one variety of the product and declares that henceforth all other varieties of the same product shall cease to bear the name under which they have customarily been sold for more than a hundred years. The percentages are without reasonable basis. It also arbitrarily excludes from the standard product ingredients which are wholesome and commonly employed. Such arbitrary classifications are unconstitutional. *Truax* v. *Raich*, 229 U. S. 33; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *Nichols* v. *Ames*, 173 U. S. 509, 521; *State* v. *Miksicek*, 125 S. W. Rep. 501.

The legislation has no tendency to prevent fraud. The cases involving colored oleomargarine have no application, there being here no substitute for a well known article of food. See *State* v. *Layton*, 61 S. W. Rep. 171, 176. The cases concerning milk are inapplicable. Milk is a definite product of nature. Its quality has been standardized to protect health and prevent fraud. *Rigbers* v. *City of Atlanta*, 66 S. E. Rep. 991; *People* v. *Biesecker*, 169 N. Y. 53, 57. Neither do cases apply which concern regulations of weight and measure.

This legislation if sustained, must be sustained solely as tending to prevent fraud, and only on the basis of the

situation as it existed before the enactment, not on the basis of a situation created by the legislation itself, and since the incontrovertible facts of common knowledge absolutely negative the possibility that any purchaser of ice cream could have been misled by the term "ice cream" into assuming that the name implied any particular proportionate butter-fat content, or that the product was made of dairy cream alone, it necessarily follows that no fraud was possible and hence the law cannot be sustained as a police measure tending to prevent fraud and deceit.

The legislature cannot prohibit the sale of a wholesome commodity in the absence of fraud; but such is the effect of this legislation if sustained. When manufacturers are deprived of the name under which their product is always bought and sold, they are deprived of the right to sell it, their business is injured, and their property taken. The privilege to sell it as something else is a privilege of no value.

Under the Pennsylvania law ice cream containing less than 8 per cent. of butter-fat can not be sold under any name. This would absolutely forbid the sale of an innocent and wholesome commodity. It can not be done. See decision of the Iowa Supreme Court in the *Hutchinson Case;* also *Rigbers* v. *City of Atlanta, supra; State* v. *Hanson* (Minn.), 136 N. W. Rep. 412; *People* v. *Marx*, 99 N. Y. 383, 387; *People* v. *Biesecker, supra.*

*Mr. George Cosson*, Attorney General of the State of Iowa, for the State of Iowa.

*Mr. William M. Hargest*, Deputy Attorney General of the Commonwealth of Pennsylvania, with whom *Mr. Francis Shunk Brown*, Attorney General of the Commonwealth of Pennsylvania, was on the brief, for the Commonwealth of Pennsylvania.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

These cases were argued together. In each a state statute which prohibits the sale of ice cream containing less than a fixed percentage of butter-fat is assailed as invalid under the Fourteenth Amendment; the Supreme Court of each State having held its statute constitutional. *State* v. *Hutchinson Ice Cream Co.*, 168 Iowa, 1; *Commonwealth* v. *Crowl*, 245 Pa. St. 554. Iowa makes 12 per cent. the required minimum; Pennsylvania 8 per cent. The material provisions of the several statutes are copied in the margin.[1]

---

[1] Iowa: Code Supp., 1913, § 4999-a20:

"No person, firm or corporation, . . . shall manufacture or introduce into the state, or solicit or take orders for delivery, or sell, exchange, deliver or have in his possession with the intent to sell, exchange or expose or offer for sale or exchange, any article of food which is adulterated or misbranded, within the meaning of this act."

Code Supp., 1913, § 4999-a31e:

"For the purpose of this act, an article of food shall be deemed to be adulterated:

"First. If any substance or substances has or have been mixed and packed with it so as to reduce or lower or injuriously affect its quality, strength or purity.

"Second. If any substance or substances has or have been substituted wholly or in part for the article.

"Third. If any valuable constituent of the article has been wholly or in part abstracted.

"Fourth. If it does not conform to the standards established by law."

Chap. 175, Acts 34th G. A. (1911), p. 192:

"ICE-CREAM."

"1. Ice-cream is the frozen product made from pure wholesome sweet cream, and sugar, with or without flavoring, and if desired, the addition of not to exceed one per cent. (1%) by weight of a harmless thickener, and contains not less than twelve per cent. (12%) by weight

The right of the State under the police power to reg-
ulate the sale of products with a view to preventing frauds
or protecting the public health is conceded by plaintiffs in
error.   And they do not contend that the particular per-
centages of butter-fat set by Iowa and Pennsylvania are so
exacting as to be in themselves unreasonable.   Thirteen
other States have by similar legislation set 14 per cent. as
the minimum; five other States 12 per cent.; only eight
States have fixed a percentage as low as Pennsylvania; and

---

of milk fat, and the acidity shall not exceed three tenths (3-10) of one
per cent (1%)."

Pennsylvania: P. L., 1909, p. 63, Purden's Dig., vol. 5, p. 5209:
"An act for the protection of the public health and to prevent fraud
and deception in the manufacture, sale, offering for sale, exposing for
sale, and having in possession with intent to sell, of adulterated or
deleterious ice cream; fixing a standard of butter fat for ice cream;
providing penalties for the violation thereof, and providing for the en-
forcement thereof.
"SECTION 1. *Be it enacted, &c.,* That no person, firm, or corporate
body, by himself, herself, itself or themselves, or by his, her or their
agents, servants, or employees, shall sell, offer for sale, expose for sale,
or have in possession with intent to sell, ice cream adulterated within
the meaning of this act.
"SECTION 2. Ice cream shall be deemed to be adulterated within the
meaning of this act—
"*First.* If it shall contain boric acid, formaldehyde, saccharine, or
any other added substance or compound that is deleterious to health.
"*Second.* If it shall contain salts of copper, iron oxide, ochres, or any
coloring substance deleterious to health: *Provided,* That this paragraph
shall not be construed to prohibit the use of harmless coloring matter
in ice cream, when not used for fraudulent purposes.
"*Third.* If it shall contain any deleterious flavoring matter, or
flavoring matter not true to name.
"*Fourth.* If it be an imitation of, or offered for sale under, the name
of another article. . . .
"SECTION 4. No ice cream shall be sold within the State containing
less than eight (8) per centum butter fat, except where fruit or nuts are
used for the purpose of flavoring, when it shall not contain less than
six (6) per centum butter fat."

the United States Department of Agriculture has declared 14 per cent. to be standard.[1] The main objection urged is this: To require that ice cream, in order to be legally salable, must contain some butter-fat is a regulation so unreasonable and arbitrary as to be a deprivation of property without due process of law and a denial of the equal protection of the laws. To support this contention the following trade facts are shown:

The ice cream of commerce is not iced or frozen cream. It is a frozen confection—a compound. The ingredients of this compound may vary widely in character, in the number used and in the proportions in which they are used. These variations are dependent upon the ingenuity, skill and judgment of the maker, the relative cost at a particular time or at a particular place of the possible ingredients, and the requirements of the market in respect to taste or selling price. Thus, some Philadelphia Ice Cream is made of only cream, sugar and a vanilla flavor. In making other Philadelphia Ice Cream the whites of eggs are added; and according to some formulas Vanilla Ice Cream may be made without any cream or milk whatsoever; for instance by proper manipulation of the yolks of eggs, the whites of eggs, sugar, syrup and the vanilla bean. All of these different compounds are commonly sold as ice cream; and none of them is necessarily unwholesome.

Plaintiffs in error contend that as ice cream is shown to be a generic term embracing a large number and variety of products and the term as used does not necessarily imply the use of dairy cream in its composition, it is arbitrary and unreasonable to limit the ice cream of commerce to that containing a fixed minimum of butter-fat. But the legislature may well have found in these facts persuasive

---

[1] The requirements of the several States are set forth in U. S. Department of Agriculture (Bureau of Animal Industry) Circular 218, on Legal Standards for Dairy Products.

evidence that the public welfare required the prohibition enacted. The facts show that in the absence of legislative regulation the ordinary purchaser at retail does not and cannot know exactly what he is getting when he purchases ice cream. He presumably believes that cream or at least rich milk is among the important ingredients; and he may make his purchase with a knowledge that butter-fat is the principal food value in cream or milk. Laws designed to prevent persons from being misled in respect to the weight, measurement, quality or ingredients of an article of general consumption are a common exercise of the police power. The legislature defines the standard article or fixes some of its characteristics; and it may conclude that fraud or mistake can be effectively prevented only by prohibiting the sale of the article under the usual trade name, if it fails to meet the requirements of the standard set. Laws prohibiting the sale of milk or cream containing less than fixed percentages of butter-fat present a familiar instance of such legislation. Cases in the state courts upholding laws of this character are referred to in the margin.[1] This court has repeatedly sustained the validity of similar prohibitions. *Schmidinger* v. *Chicago*, 226 U. S. 578; *Armour & Co.* v. *North Dakota*, 240 U. S. 510.

It is specially urged that the statutes are unconstitutional because they do not merely define the term ice cream; but arbitrarily prohibit the sale of a large variety of wholesome compounds theretofore included under the name ice cream. The acts appear to us merely to prohibit the sale of such compounds as ice cream. Such is the construction given to the act by the Supreme Court of Iowa.

---

[1] *Iowa* v. *Schlenker*, 112 Iowa, 642; *State* v. *Campbell*, 64 N. H. 402; *People* v. *Bowen*, 182 N. Y. 1; *State* v. *Crescent Creamery Co.*, 83 Minn. 284; *Louisiana* v. *Stone*, 46 La. Ann. 147; *Deems* v. *Baltimore*, 80 Md. 164; *Commonwealth* v. *Wheeler*, 205 Mass. 384; *St. Louis* v. *Grafeman Dairy Co.*, 190 Mo. 507; *State* v. *Smyth*, 14 R. I. 100.

*State* v. *Hutchinson Ice Cream Co.*, 168 Iowa, 1, 15, which is of course binding on us. We cannot assume, in the absence of a definite and authoritative ruling, that the Supreme Court of Pennsylvania would construe the law of that State otherwise. The conviction here under review was for selling the "compound" as ice cream, so that we are not called upon to determine whether the State may in the exercise of its police power prohibit the sale even of a wholesome product, if the public welfare appear to require such action—and if, as here, interstate commerce is not involved. See *Powell* v. *Pennsylvania*, 127 U. S. 678, 685; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1, 15.

In view of the conclusion stated above, it is unnecessary to consider whether the statutes are or are not sustainable as health measures; and upon this we express no opinion.

The judgment in each case is

*Affirmed.*