### KENTUCKY WHIP & COLLAR CO. v. ILLINOIS CENT. R. CO.
#### No. 992.

District Court, W. D. Kentucky.
Oct. 3, 1935.

Charles I. Dawson and Woodward, Dawson & Hobson, all of Louisville, Ky., for plaintiff.

Trabue, Doolan, Helm & Helm, of Louisville, Ky., for defendant.

Bunk Gardner, U. S. Dist. Atty., and Eli H. Brown, III, Asst. U. S. Dist. Atty., both of Louisville, Ky., amicus curiæ.

HAMILTON, District Judge.

On August 28, 1935, a preliminary mandatory injunction was issued in this action in accordance with the prayer of the petition, and since that date has been in full force and effect. The case is now finally submitted on the motion of the plaintiff for a perpetual injunction, and motion of the defendant to dismiss the bill.

The plaintiff, Kentucky Whip & Collar Company, is a corporation organized under the laws of the commonwealth of Kentucky, with its principal place of business at Eddyville, Ky. It has been for many years, and is now, engaged in the business of manufacturing in the Kentucky State Penitentiary at Eddyville, Ky., with convict labor, horse collars and strap goods, and has marketed and sold its products throughout the states of the Union.

The defendant, Illinois Central Railroad Company, is a corporation incorporated under the laws of the state of Illinois, and is a citizen of that state. It is engaged in the business of a common carrier by rail and is the principal carrier of the plaintiff's products to its customers.

The amount involved in this action exceeds $3,000.

The plaintiff enjoyed a very large trade in several states of the Union. Its products are useful articles of commerce and are not in any particular harmful to the health, peace, or good order of the communities into which they are shipped.

The plaintiff, on August 13, 1935, tendered to the defendant, the Illinois Central Railroad, at its freight station at Eddyville,

Ky., without any brand or mark thereon, certain of its manufactured goods which had been produced in their entirety with prison labor under contract with the commonwealth of Kentucky in its penitentiary at Eddyville, Ky. These articles had been previously sold to customers and consigned to them for shipment by the defendant to the states of Arizona and Pennsylvania, which states at the time the shipment was tendered, by their laws, prohibited the sale within their borders of goods or merchandise manufactured in whole or in part by convict labor anywhere, other than by convicts or prisoners on parole or probation; to the state of North Carolina, which state at the time the shipment was tendered, by its laws, prohibited the sale within its borders of any goods or merchandise, other than farm products, coal, and chert, manufactured in whole or in part by convict labor anywhere, other than by convicts or prisoners on parole or probation; to the state of Illinois, which state at the time the shipment was tendered, by its laws, prohibited the sale within its borders of goods, or merchandise, other than agricultural limestone produced in the penal and reformatory institutions of that state, manufactured in whole or in part by convict labor anywhere other than by convicts or prisoners on parole or probation; to the states of Ohio, Kansas, and Texas, which states at the time the shipment was tendered, by their laws, prohibited the sale within their borders of goods or merchandise produced or prepared wholly or in part by convicts or convict labor of other states, other than by convicts or prisoners on parole or probation; to the state of Nebraska, which state at the time the shipment was tendered, by its laws, prohibited the sale of any convict-made or produced goods or merchandise, other than farm supplies, machinery, and equipment, manufactured in whole or in part by convict labor anywhere, other than by convicts on parole or probation; to the state of Virginia, which state at the time the shipment was tendered, by its laws, prohibited the sale of any goods or merchandise convict made, unless made or produced in the state of Virginia; to the state of Michigan, which state at the time the shipment was tendered, by its laws, prohibited the sale of any goods or merchandise, other than binder twine, rope, and cordage, manufactured in whole or in part by convict labor; to the state of Indiana, which state at the time the shipment was tendered, by its laws, required all convict-made goods sold or exposed in that state to be labeled "convict-made"; to the state of Iowa, which state at the time the shipment was tendered, by its laws, required each article of prison or convict-made merchandise sold or exposed for sale to be plainly labeled to indicate same was made by convict or prison labor; to the state of Wisconsin, which state at the time the shipment was tendered, by its laws, required all convict-made merchandise, other than those made in Wisconsin, to be plainly labeled "convict-made," together with a statement of the year when made and the name of the prison where made; to the state of Minnesota, which state at the time the shipment was tendered, by its laws, required all convict-made merchandise brought into that state and exposed for sale to be labeled "prison-made," together with a statement of the year of manufacture and the prison at which produced; to the state of Georgia, which state at the time the shipment was tendered, by its laws, required all convict-made goods exposed for sale in that state to be plainly labeled so as to indicate they were convict made; to the states of West Virginia, Tennessee, South Carolina, Louisiana, Alabama, Missouri, Arkansas, Oklahoma, Maryland, and Mississippi, which states at the time the shipment was tendered had no law in any wise restricting the shipment of convict-made goods from other states or requiring them to be labeled so as to indicate that said goods were convict made.

Defendant refused to accept said shipments and to transport same and upon the bills of lading indorsed the following words: "Shipment refused because prohibited by Act of Congress approved July 24, 1935." Said act, which is entitled "An Act To prohibit the interstate transportation of prison-made products in certain cases," is as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That it shall be unlawful for any person knowingly to transport or cause to be transported, in any manner or by any means whatsoever, or aid or assist in obtaining transportation for or in transporting any goods, wares, and merchandise manufactured, produced, or mined wholly or in part by convicts or prisoners (except convicts or prisoners on parole or probation), or in any penal or reformatory institution, from one State, Ter-

ritory, Puerto Rico, Virgin Islands, or District of the United States, or place noncontiguous but subject to the jurisdiction thereof, or from any foreign country, into any State, Territory, Puerto Rico, Virgin Islands, or District .of the United States, or place noncontiguous but subject to the jurisdiction thereof, where said goods, wares, and merchandise are intended by any person interested therein to be received, possessed, sold, or in any manner used, either in the original package or otherwise in violation of any law of such State, Territory, Puerto Rico, Virgin Islands, or District of the United States, or place noncontiguous but subject to the jurisdiction thereof. Nothing herein shall apply to commodities manufactured in Federal penal and correctional institutions for use by the .Federal Government.

"Sec. 2. All packages containing any goods, wares, and merchandise manufactured, produced, or mined wholly or in part by convicts or prisoners, except convicts or prisoners on parole or probation, or in any penal or reformatory institution, when shipped or transported in interstate or foreign commerce shall be plainly and clearly marked, so that the name and address of the shipper, the name and address of the consignee, the nature of the contents, and the name and location of the penal or reformatory institution where produced wholly or in part may be readily ascertained on an inspection of the outside of such package.

"Sec. 3. Any person violating any provision of this Act shall for each offense, upon conviction thereof, be punished by a fine of not more than $1,000, and such goods, wares, and merchandise shall be forfeited to the United States, and may be seized and condemned by like proceedings as those provided by law for the seizure and forfeiture of property imported into the United States contrary to law.

"Sec. 4. Any violation of this Act shall be prosecuted in any court having jurisdiction of crime within the district in which said violation was committed, or from, or into which any such goods, wares, or merchandise may have been carried or transported, or in any Territory, Puerto Rico, Virgin Islands, or the District of Columbia, contrary to the provisions of this Act." 49 USCA §§ 61–64.

Plaintiff prays for a binding declaration of rights between this plaintiff and defendant, decreeing and adjudging the act vio-

lative of the Constitution of the United States (1) because said act is not a valid exercise of the power conferred upon Congress by the Constitution to regulate commerce with foreign nations, among the several states, but is an unconstitutional attempt by Congress to prohibit, regulate, and interfere with the purely local business of manufacturing and producing useful and harmless articles of commerce; (2) said act is an unconstitutional attempt on the part of Congress to deal with matters reserved to the states and the people by the Tenth Amendment to the Constitution of the United States; (3) that it is violative of the Fifth Amendment to the Constitution of the United States, in that it deprives the plaintiff of its property, including the right to do business in interstate commerce, without due process of law; (4) that it is an unconstitutional attempt on the part of Congress to so exercise its power to regulate interstate commerce as to permit the respective states of the Union, under the protection of said act, to prohibit and regulate interstate transactions between their inhabitants and the inhabitants of other states with reference to useful and harmless articles of commerce.

Is the act complained of a valid exercise of the power of Congress to regulate commerce among the several states? Constitution, art. 1, § 8, cl. 3.

The government of the United States can claim no powers not granted to it by the Constitution either expressly given or by necessary implication. The words used in the Constitution are to be taken in their natural and obvious sense and not in a sense unreasonably restricted or enlarged, and in considering the powers conferred on the central government by the states under this instrument, we must always keep in mind the objects and purposes for which the powers granted were conferred.

Disordered commerce among the states contributed largely to the fall of the original Confederacy. It was soon found, following the Revolution, that it was idle and visionary to suppose that while thirteen independent states possessed the exclusive power of regulating commerce, there would be found any uniform system or harmony or co-operation for the general welfare.

The necessity of power being lodged in the central government to regulate commerce among the states was one of the

prime causes for the establishment of the Constitution. "It is a power vital to the prosperity of the Union and without it the Government would scarcely deserve the name of a National Government and would soon sink into discredit and imbecility. It would stand as a mere shadow of sovereignty to mock our hopes and involve us in common ruin." Story on the Constitution, vol. 2, p. 2.

This enumerated power of the federal government to regulate commerce among the several states has been the subject of endless discussion from the adoption of the Constitution to the present time. It has been used as both a shield and a sword. Industry enjoying the special privileges of government has set it up as a breastwork of defense against dislodgment, and others have used it to invade the rights of one group to their own advantage. Its beneficent purpose should never be disregarded by courts in interpreting its meaning. It should be used only for promoting the general welfare and securing the blessings of liberty to ourselves and our posterity.

It is said by counsel for the plaintiff that the act here involved contravenes the Constitution, in that it is not a proper regulation of commerce among the states, and for that reason the court should strike it down. The overthrow by the courts of an act of Congress involves the gravest responsibility and should never be done except where the Congress has disregarded the plain or implied restraints of the Constitution. The use of the power to regulate commerce is not confined exclusively to the promotion of trade among the states. It can be used to promote the public welfare in every particular, which includes health, morals, public safety, peace, and good order. It can also be used to prevent fraud, deceit, and imposition in trade, sales, and contracts relating to the disposition of manufactured goods.

New necessities, new evolutions of society into more complex conditions, evoke the exercise of an old power in a new way. The control of new things does not require new power if the old power still exists.

Improved transportation and communication, rapid exchanges because of new inventions, have widened the scope and expedited the distribution of manufactured goods. No longer can the doctrine of laissez faire, or the buyer beware, accord

to our citizens the protection they deserve in the purchase of goods, food, or clothing.

If it would be of substantial benefit to the purchaser of manufactured products to know their place of origin and conditions under which manufactured, the Congress has the right to use the commerce clause of the Constitution to confer on them its benefits in the purchase and use of the products of trade.

Before the act here in question was passed by the Congress, twenty-two states of the Union had passed legislation either prohibiting or regulating the sale of convict-made goods.

The criminal code and the conduct of penitentiaries have in recent years undergone great changes. Punishment is yielding some of its rigors to reformation. Most penitentiaries are no longer dismal, unsanitary places of detention for the broken and moral defective, where idleness makes the bad worse. Convicts are no longer the pawns of outside contractors. Idleness of inmates is the dread of all prison superintendents. However, useful work may be found for the inmate at penal institutions under the modern system without using unskilled hands to manufacture and place on the market inferior goods.

Prisoners may be gainfully employed in building useful public institutions in the states. No better illustration of this fact can be found than in the commonwealth of Kentucky. Its penal and charitable institutions are antiquated, unsanitary, crowded, expensive to operate, and wholly inadequate for the purpose for which intended. The commonwealth is blessed with abundant raw material for the erection of either stone or brick buildings. All of its institutions are now overcrowded, and every inmate capable of work could be used for the building of modern new institutions, which would be a blessing to our mental defectives and moral delinquents. Similar projects could be carried out by convicts in other states of the Union. There is no likelihood of deceit or fraud being practiced on the public by this type of work, as is often the case where convict labor is used for the manufacture and sale of articles of trade.

It has been the practice in some instances of persons dealing in convict-made goods to represent that the manufacturing was done in free institutions and by skilled labor. The Federal Trade Commission has found this is be an unfair trade prac-

42

tice. See the proceedings of that body in the matter of Commonwealth Manufacturing Company and Harry Dushoff, doing business under the trade-names and styles of Harry Dushoff & Co., and Chicago Manufacturing Company, Docket No. 1367.

Usually the place of manufacture of an article is disclosed as a matter of advertising and good will, and so far as I know no producer of a product in general use and sale has sought to conceal the place of production. The fact that the plaintiff in the case at bar contends that his business would be destroyed if required to label his product is strongly persuasive that the buying public attaches great importance to the place of manufacture, and a regulation requiring labeling is not in conflict with the Constitution.

■ The framers of the Constitution never intended that the power lodged in the Congress to legislate should be subject to the control of the judiciary if there was a basis for the congressional action, no matter how slight in fact it might be. It is only necessary for me to decide in this case that there was a slight basis for the act of Congress in requiring the labeling of the plaintiff's product when tendered for shipment in interstate commerce, and such a basis undoubtedly existed. Courts have many times sustained legislation essentially similar to the act here in question. In re Rahrer (Wilkerson v. Rahrer), 140 U. S. 545, 11 S. Ct. 865, 35 L. Ed. 572; Adams et al. v. Tanner, Attorney-General of the State of Washington et al., 244 U. S. 590, 37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; Whitfield v. State of Ohio, 129 Ohio St. 543, 196 N. E. 164 (See opinion of lower court, Court of Appeals, Cuyahoga County, State of Ohio, Eighth District, 197 N. E. 605). Carey v. State of South Dakota, 250 U. S. 118, 39 S. Ct. 403, 63 L. Ed. 886; Schollenberger v. Pennsylvania, 171 U. S. 1, 18 S. Ct. 757, 43 L. Ed. 49; Louisville & N. R. R. Co. v. F. W. Cook Brewing Co., 223 U. S. 70, 32 S. Ct. 189, 56 L. Ed. 355; Hutchinson Ice Cream Co. et al. v. State of Iowa, 242 U. S. 153, 37 S. Ct. 28, 61 L. Ed. 217, Ann. Cas. 1917B, 643; Hygrade Provision Co., Inc., et al. v. Sherman, as Attorney-General of the State of New York, et al., 266 U. S. 497, 45 S. Ct. 141, 69 L. Ed. 402; Brazee v. People of the State of Michigan, 241 U. S. 340, 36 S. Ct. 561, 60 L. Ed. 1034; Powell v. Pennsylvania, 127 U. S. 678, 8 S. Ct. 992,

1257, 32 L. Ed. 253; Miller v. Wilson, Sheriff of Riverside County, State of California, 236 U. S. 373, 35 S. Ct. 342, 59 L. Ed. 628, L. R. A. 1915F, 829; Lottery Cases (Champion v. Ames), 188 U. S. 321, 23 S. Ct. 321, 47 L. Ed. 492; Hoke v. United States, 227 U. S. 308, 33 S. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905; Hipolite Egg Co. v. United States, 220 U. S. 45, 31 S. Ct. 364, 55 L. Ed. 364; Weeks v. United States, 245 U. S. 618, 38 S. Ct. 219, 62 L. Ed. 513; Weber v. Freed, 239 U. S. 325, 36 S. Ct. 131, 60 L. Ed. 308, Ann. Cas. 1916C, 317; Rupert v. United States (C. C. A.) 181 F. 87; Lacoste v. Department of Conservation, 263 U. S. 545, 44 S. Ct. 186, 68 L. Ed. 437; Missouri v. Holland, 252 U. S. 416, 40 S. Ct. 382, 64 L. Ed. 641, 11 A. L. R. 984; Detweiler v. Welch (D. C.) 46 F. (2d) 71, 73 A. L. R. 1440; State of Wyoming v. W. S. Buck Mercantile Co. et al., 38 Wyo. 47, 264 P. 1023, 57 A. L. R. 675; People of the State of New York v. Beakes Dairy Co., 222 N. Y. 416, 119 N. E. 115, 3 A. L. R. 1260; Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469; Lemke, as Attorney-General of the State of North Dakota, et al. v. Farmers' Grain Co., 258 U. S. 50, 42 S. Ct. 244, 66 L. Ed. 458.

The plaintiff strongly relies on the case of People of the State of New York v. Hawkins, 157 N. Y. 1, 51 N. E. 257, 42 L. R. A. 490, 68 Am. St. Rep. 736, in support of its contention that neither the states nor Congress has the power to require convict-made goods to be so labeled.

The cited case was the divided opinion of the court, and while the majority did decide that it was an unconstitutional exercise of power to mark goods "convict-made," the opinion was handed down in 1898. Conditions in trade and commerce have radically changed in thirty-seven years, and the reasons of the majority are not now well founded. The opinion states as the only basis for the legislation the prevention of convict-made goods competing with free labor. This is not the only basis for such legislation. The labeling of goods "convict-made" does not interfere with placing the goods on the market, nor does it prohibit any person from buying them or dealing in them. When labeled the citizen knows where the goods he is buying were made. The labeling in no way interferes with the use of the goods, and does not affect their intrinsic

value. It merely prevents deceit and gives the public information of value to it, in determining whether or not it desires to purchase and use products manufactured in a penitentiary.

The case of Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724, much relied on by the plaintiff, involved an act of Congress (39 Stat. 675) that absolutely prohibited the shipment in interstate commerce of goods manufactured by children under the age of sixteen years. The court held the act void. That act was one of absolute prohibition, while the act here under consideration is one of regulation. The court undertook to distinguish its opinion in that case from prior ones on the ground that the earlier acts were regulatory and this one prohibitory.

Plaintiff contends the United States is without police power similar to that exercised by the states. This contention is often made, and some of the opinions of the courts would lend color to it; but when the question is closely examined it will be found that the Congress in exercising a power conferred on the federal government may adopt police regulations in the same form and manner as the states. Hoke v. United States, 227 U. S. 308, 33 S. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905; Buttfield v. Stranahan, 192 U. S. 470, 24 S. Ct. 349, 48 L. Ed. 525; Adair v. United States, 208 U. S. 161, 28 S. Ct. 277, 52 L. Ed. 436, 13 Ann. Cas. 764; Seven Cases v. United States, 239 U. S. 510, 36 S. Ct. 190, 60 L. Ed. 411; Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Brooks v. United States, 267 U. S. 432, 45 S. Ct. 345, 69 L. Ed. 699, 37 A. L. R. 1407; Weber v. Freed, 239 U. S. 325, 36 S. Ct. 131, 60 L. Ed. 308, Ann. Cas. 1916C, 317; Yee Hem v. United States, 268 U. S. 178, 45 S. Ct. 470, 69 L. Ed. 904; Board of Trustees of University of Illinois v. United States, 289 U. S. 48, 53 S. Ct. 509, 77 L. Ed. 1025.

Plaintiff's contention that the act here in question must fall in all of its parts because in conflict with the Tenth and Fifth Amendments is fully answered by the reasons heretofore stated. The last ground urged is that it delegates power to the states exclusively lodged in the federal government. This deserves a more extended consideration.

The first section of the act (49 USCA § 61) makes it unlawful to knowingly transport into a state goods manufactured by convict labor in violation of the local law. The validity of this section depends on what power the Congress has over the prohibited goods in the first instance. If it has the power under the commerce clause to adopt the same regulations as the state has adopted, it can aid the state in the enforcement of its law and can adopt the state law as its own in carrying out a power conferred on it by the Constitution. Joint action between the state and the federal government to remedy an evil should be encouraged when possible. Such a course promotes unity of action and harmony of purpose. It lessens conflict between the federal and state government and tends to uniformity of laws.

The principle of adopting state laws to carry out a federal power is thoroughly settled in this country. In re Rahrer (Wilkerson v. Rahrer), 140 U. S. 545, 11 S. Ct. 865, 35 L. Ed. 572; Clark Distilling Co. v. Western Maryland R. R. Co., 242 U. S. 311, 37 S. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845; United States v. Hill, 248 U. S. 420, 39 S. Ct. 143, 63 L. Ed. 337; People of State of New York ex rel. Silz v. Hesterberg, 211 U. S. 31, 29 S. Ct. 10, 53 L. Ed. 75.

Power is lacking in either the federal or state government to prohibit the shipment of labeled convict-made goods in either intrastate or interstate commerce. Such articles are legitimate objects of trade. So much of the act here involved as prohibits their shipment or sale is void. Some of the states of the Union absolutely prohibit their shipment, and the Congress is without power to adopt or concur in the laws of these states containing absolute prohibition. However, this defect does not void so much of the act here in question as provides for labeling the goods.

It may be safely assumed that the Congress would have passed an act regulating the shipment of convict-made goods with the unconstitutional provision eliminated, because regulation is less severe than prohibition. El Paso & N. E. R. Co. v. Gutierrez, 215 U. S. 87, 30 S. Ct. 21, 54 L. Ed. 106; Dorchy v. Kansas, 264 U. S. 286, 44 S. Ct. 323, 68 L. Ed. 686; Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108; Howard v. Illinois Central R. Co., 207 U. S. 463, 28

44

S. Ct. 141, 52 L. Ed. 297; Little Rock & Ft. S. R. Co. v. Worthen, 120 U. S. 97, 7 S. Ct. 469, 30 L. Ed. 588; Berea College v. Kentucky, 211 U. S. 45, 29 S. Ct. 33, 53 L. Ed. 81.

The title to the act here in question reads, "An Act To prohibit the interstate transportation of prison-made products in certain cases." The plaintiff insists that this title shows a clear intention on the part of Congress to pass only a prohibitory act, but this conclusion is not tenable in view of the fact that the body of the act does not prohibit the shipment of goods when properly labeled according to its terms. There is no ambiguity in the act, and prohibition only arises where it is sought to assist the states in enforcing prohibitory laws. White v. United States, 191 U. S. 545, 24 S. Ct. 171, 48 L. Ed. 295; Rector, etc., of Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; Coosaw Mining Company v. South Carolina, 144 U. S. 550, 12 S. Ct. 689, 36 L. Ed. 537.

The economic tide is inevitably forcing on the courts the need for giving ever expanding latitude to the commerce clause of the Constitution. Any other course will unerringly lead to a retardation of our civilization.

The plaintiff's petition will be dismissed. However, the injunction heretofore issued will be continued in force during appeal.