**CAROLENE PRODUCTS CO. OF LITCH-
FIELD, ILL., v. WALLACE, Secretary
of Agriculture, et al.**
No. 1462.

District Court of the United States for the
District of Columbia.
March 20, 1939.

Order affirmed May 22, 1939.

See 59 S.Ct. 1033, 83 L.Ed. ——.

Frank K. Nebeker, of Washington, D. C., and George N. Murdock, of Chicago, Ill., for plaintiff.

David A. Pine, U. S. Dist. Atty., Harry L. Underwood, Asst. U. S. Dist. Atty., and William Garbose, Department of Justice, all of Washington, D. C., for defendants.

Before EDGERTON, Associate Justice, United States Court of Appeals for the District of Columbia, LUHRING and LETTS, Justices, District Court of the United States for the District of Columbia.

LETTS, Justice.

The plaintiff seeks a temporary injunction restraining the defendants from prosecuting a criminal proceeding which has been instituted against plaintiff for and on account of the shipment or delivery of plaintiff's products "The New Vitamin A Carolene" and "The New Vitamin A Milnut" in interstate commerce in alleged violation of the provision of the "Filled Milk Act" of March 4, 1923 (chapter 262, 42 Stat. 1486, 21 U.S.C. §§ 61–63, 21 U.S.C.A. §§ 61–63), and from instituting and prosecuting threatened proceedings of like nature. The act prohibits the shipment in interstate commerce of skimmed milk compounded with any fat or oil other than milk fat so as to resemble milk or cream. Plaintiff asserts that the act is unconstitutional as applied to its products; that it transcends the power of Congress to regulate interstate commerce and infringes the Fifth Amendment.

Plaintiff is aware that the statute has been judicially declared to be valid on its face. The United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 784, 82 L.Ed. 1234. We think in that case Justice Stone speaking for the court indicated the narrow scope within which plaintiff's case must fall if maintainable: he said "Similarly we recognize that the constitutionality of a statute, valid on its face, may be assailed by proof of facts tending to show that the statute as applied to a particular article is without support in reason because the article, although within the prohibited class, is so different from others of the class as to be without the reason for the prohibition, * * *, though the effect of such proof depends on the relevant circumstances of each case, as for example the administrative difficulty of excluding the article from the regulated class. * * * But by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it. * * * And it is evident from all the considerations presented to Congress, and those of which we may take judicial notice, that the question is at least debatable whether commerce in filled milk should be left unregulated, or in some measure restricted, or wholly prohibited. As that decision was for Congress, neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it."

Viewing the circumstances of the case at bar, shown in the affidavits, we conclude that they fairly prove that plaintiff's products are wholesome and nutritious articles of food; but we think the evidence fails to show plaintiff's products to be in any wise different from other articles within the prohibited class. Plaintiff claims that since its products are wholesome and nutritious, it is not within the reason for the prohibition. An examination of the evidence, which includes

the hearings before committees of Congress and the reports of such committees, persuades us that the wholesome and nutritious qualities of plaintiff's products do not exclude such products from the regulated class. The issue which plaintiff presents draws in question the legislative judgment and we think the Congressional hearings and reports in evidence, clearly reveal a state of facts which furnishes ample support for the legislative action of which plaintiff complains. Upon the considerations placed before the committees and the Congress, it became a legislative function to regulate, restrict or prohibit articles of food, though wholesome and nutritious in the exercise of its commerce power. Legislative acts, when subjected to judicial scrutiny, must be presumed to rest on a rational basis if such would exist under any conceivable state of facts; and if a practical question be addressed to the law making department it will require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court: when public evils ensue from individual misfortune or need, the legislature may strike at the evil at its source. If the purpose is legitimate because public, it will not be defeated. Carmichael v. Southern Coal Co., 301 U.S. 495, 518, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A. L.R. 1327.

■ It has been held competent for a state legislature, in the exercise of its police power, to recognize the difficulties besetting the administration of laws aimed at the prevention of traffic in intoxicants: and it was held that in dealing with a class of beverages which in general are regarded as intoxicating, it is not bound to resort ·to discrimination with respect to ingredients and processes of manufacture, which in the endeavor to eliminate innocuous beverages from the condemnation, would facilitate subterfuges and frauds and fetter the administration of the law. It does not follow that because a transaction separately considered is innocuous it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the Government. Unless it clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended. Judicial opinion of expediency may not be substituted for the will of the legislature. Purity Extract Co. v. Lynch, 226 U.S. 192, 33 S. Ct. 44, 57 L.Ed. 184. The case is authority for the proposition that since the opinion is extensively held that a general prohibition of sale of malt liquors whether intoxicating or not is necessary to suppress the sale of intoxicants, in the exercise of its police power a state may include within the prohibition innocent malt beverages.

The reports of the Congressional committees reveal the considerations placed before the Congress. The report of the House committee indicates that it was found and believed that filled milk had taken the place of thousands of pounds of butter fat, injuring the market of the American farmer, bringing his product into competition with an inferior product produced by oriental and other cheap labor and handled in many instances under shockingly insanitary conditions. These committees reported to Congress that filled milk lends itself to fraudulent marketing practices. Indeed the Senate committee reported that it was of opinion that it is impossible to prevent fraudulent use and sale of the compound on account of the incentive of additional profit. The reports further represented to Congress that filled milk was an inferior product. They made reference to "Carolene" by specific mention and found that it and other filled milk products were lacking in certain vitamins which are absolutely necessary to promote growth in the human body. Whether as plaintiff contends it has overcome this condition of inferiority by adding to its products cod liver oil supplying in the "New Vitamin A Carolene" and the "New Vitamin A Milnut" the vitamins found to be lacking in the earlier product, need not be determined since we find that other considerations before the Congressional committees were of sufficient public concern to justify the exclusion of filled milk, as defined by Congress, from movement in interstate commerce.

■ We have found that plaintiff's products are wholesome. It is clear that Congress acted under no misapprehension in that regard. In the report of the Senate committee we find plaintiff's present contention fully and fairly set out in the counter arguments: but the committees were not swayed by the argument. The power of the legislature is not to be denied simply because some innocent articles

may be found within the prohibited class. The inquiry must be whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat. Purity Extract Co. v. Lynch, supra. The precise question was before the court in Hebe Co. v. Shaw, 248 U.S. 297, 39 S.Ct. 125, 63 L.Ed. 255. There it was argued that since Hebe was a wholesome product the statute involved should not be construed to prohibit it, if such a construction could be avoided as in Hutchinson Ice Cream Co. v. Iowa, 242 U.S. 153, 37 S.Ct. 28, 61 L.Ed. 217, Ann.Cas.1917B, 643; but the court proceeded to say that the object of the legislation plainly was to secure the presence of the nutritious elements mentioned in the act, and to save the public from the fraudulent substitution of an inferior product that would be hard to detect. In that case Justice Holmes in the opinion added [248 U.S. 297, 39 S.Ct. 126]: "We may assume that the product is improved by the addition [of cocoanut oil to skimmed milk], but the body of it still is condensed skimmed milk, and this improvement consists merely in making the cheaper and forbidden substance more like the dearer and better one and thus at the same time more available for a fraudulent substitute."

We think the reports of the Congressional committees clearly show the purpose of the act and the reason for the prohibition therein provided. It had three aspects: to forbid the competition of a cocoanut grove with the American cow; to prevent the practice of frauds on the consuming public; and to avoid harm to the public health through the substitution of inferior fats for butter fat in an important food product. It is not for this court to question the wisdom of Congress. Plaintiff's products are not shown to be different from other articles of food within the prohibited class, and the addition of needed vitamins through the presence of cod liver oil does not take plaintiff's products out of the prohibited class. There was expert medical testimony before the Congressional committees that no vegetable oil can be made an effective substitute for butter fat. The determination of the question was within the judgment of Congress.

Plaintiff comes into equity alleging that unless defendants are enjoined it will be subjected to a multiplicity of prosecutions and will suffer irreparable loss and damage. Plaintiff's apprehensions seem to arise from the bulletin of the Department of Agriculture, released May 9, 1938, by which warning was given that legal action will be taken against all interstate shipment of any product falling within the definition of filled milk. Defendants disclaim any intention to do more than prosecute the case now pending and to institute one other against plaintiff. The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights and the danger of irreparable loss must be both great and immediate; otherwise the accused must set up his defense in the criminal case, even when his defense involves the validity of the statute, with the violation of which he is charged. Spielman Motor Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322. We conclude that plaintiff has failed to show a state of facts which requires equitable relief.

It is unnecessary for us to pass upon other considerations urged in the defense for what we have said upon the merits and in declining equitable jurisdiction control our disposition of the question before us. The application for temporary relief must be denied.

It is so ordered.