**JEWEL TEA CO., Inc. v. KRAUS.**
**No. 10154.**

United States Court of Appeals
Seventh Circuit.
Dec. 5, 1950.
Rehearing Denied March 6, 1951.

Francis V. Healy, Robert G. Dreffein, and Arthur Abraham, all of Chicago, Ill., for appellant.

Leslie M. Parker, Avern B. Scolnik, Chicago, Ill., Parker & Carter, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff brought this action alleging trade-mark infringement and unfair competition. The claim that there was trade-mark infringement was dismissed, because of the local, intrastate nature of defendant's business, however, the district court sustained the plaintiff's claim as to unfair competition and entered a judgment and decree, permanently enjoining and restraining defendant from using the word "Jewel" or any name similar to or in imitation thereof in the names of his stores, and in, about or in connection with the conduct and operation of his business in the city of Chicago, its suburbs, and the State of Illinois.

Jewel Tea Company was incorporated as an Illinois corporation in 1904. Jewel Tea Company, Inc., the plaintiff herein, is a New York corporation incorporated on January 14, 1916, and was authorized to do business in Illinois on January 16, 1916. Plaintiff acquired the assets of the previously incorporated Illinois corporation. On March 8, 1932, Jewel Food Stores, Inc., was incorporated as a New York corporation. It merged with plaintiff on February 19, 1934.

In the beginning plaintiff engaged in merchandising certain food products by means of wagons and trucks. At the time of trial plaintiff had routes for door-to-door delivery in 41 States. From March 11, 1932, until the merger on February 19, 1934, Jewel Food Stores, Inc., as a subsidiary of plaintiff, operated a chain of retail grocery stores in Chicago and suburbs. At the time of the trial plaintiff operated 150 retail food stores in the Chicago area, including four in Berwyn, two in Cicero and seven in Oak Park, under the name "Jewel Food Stores, A Department of Jewel Tea Co., Inc." Since February 19, 1934, the name "Jewel Food Stores, Inc." has not been used as a corporate name by plaintiff.

Plaintiff's business is nationwide in scope and from 1936 to 1945 plaintiff spent $1,500,000 in advertising its business conducted in its stores. In 1945 its total store business was in excess of $37,000,000, of which more than $4,000,000 was from the sale of dairy products. Plaintiff first sold ice cream in its stores commencing in February, 1945, and sold it in packages bearing the name "Jewel" since August 1, 1946.

Plaintiff first used the word "Jewel" on a store sign on November 1, 1932. At the trial it was stipulated, "No store or other

establishment has been found dealing in food of any sort under the name 'Jewel' prior to plaintiff's opening of their (sic) food stores as stipulated hereinabove." On November 1, 1934, plaintiff first installed a sign on one of its stores, containing the word "Jewel" in large letters and the words "Food" and "Store" on either side in smaller letters. In every store sign used by plaintiff since November, 1932, on the outside of its store buildings, which signs were visible to the public, the word "Jewel" appeared in letters twice as high and wide as the letters in other words appearing on the sign. The words "Jewel Tea" have never been used in combination on store signs by the plaintiff or by Jewel Food Stores, Inc. In 1945, 16% of the grocery items sold by plaintiff in its stores bore the name "Jewel."

Plaintiff uses one of three types of signs on its stores: The type most commonly used has the word "Jewel" in the center and has two side panels, the one on the left containing the words "Serve Yourself" and the one on the right containing the words "Save Money." In the second type the word "Jewel" is in the center while the left panel contains the word "Food" and the right panel contains the word "Store." And in the third type only the word "Jewel" is used.

Defendant entered the milk business in 1930 in Cicero, Illinois, operating a retail dairy selling milk, cream, butter, eggs and cheese. In 1934 defendant opened two retail milk stores in Cicero, specializing in the sale of milk in gallon jugs. At the time of the trial defendant owned and operated eight stores located in Berwyn, Cicero and Oak Park. One of defendant's stores was located immediately adjacent to and in the same building as one of plaintiff's stores; one was located five doors from the nearest store of plaintiff; and the remaining six were located respectively 1, 2, 6, 7, 14 and 17 blocks distant from the nearest store operated by plaintiff.

The largest volume of defendant's business is in the sale of dairy products, but he also sells a line of miscellaneous grocery items. The word "Jewel" or "Jewels" in combination with the word "Dairy" was first used by defendant on a milk and dairy

store in 1940. The name "Jewel" was first placed by the defendant on a product—ice cream—in 1940. On September 30, 1946, defendant, doing business as Jewel Milk Stores, registered the name "Jewel" with the Secretary of the State of Illinois, and was issued a certificate of registration. The word "Jewel" has not and presently is not being used by defendant on any product other than ice cream. In 1945 defendant's total business amounted to $300,000.

Contending that the likelihood of confusion is negligible defendant points to a number of differences in the physical characteristics and methods of operation between plaintiff's and defendant's stores: plaintiff's stores are larger than defendant's, and are largely self-serviced, thus involving a difference in interior arrangements; defendant's stores are open Sundays, holidays and until eleven o'clock in the evening, whereas plaintiff's stores are closed at such times (at least they were prior to the time of the trial); plaintiff does not sell milk in gallon or half-gallon containers whereas such sales are large items of defendant's business; defendant uses window signs, "Jewel Milk Stores," in which the word "Jewel" is in script in white letters on a black background, whereas in plaintiff's signs the word "Jewel" is not in script and is in black letters on a white background; plaintiff's employees wear distinctive uniforms, whereas those of defendant do not; and further, defendant's stores do not sell fruits, vegetables and fresh meats.

The district court found that the plaintiff had so identified the word "Jewel" with itself in connection with the retail grocery business in Chicago and suburbs as to give it a secondary meaning as applied to the business in which it is engaged; that defendant is a subsequent user of the word "Jewel" and that the businesses conducted by plaintiff and defendant are so similar that there has been, and there will be a likelihood of, confusion by the public, trade and customers; that the testimony disclosed instances of actual confusion between plaintiff's and defendant's stores; and that there existed in the minds of the public an association between the word "Jewel" and the plaintiff's business.

There is no hard and fast rule by which it can be determined when a court should interfere by injunction to prevent unfair methods of business. Many of the decisions on the question of unfair competition seem to be in conflict. One line of cases adopts a narrow rule of construction, where the word appropriated as a trade-mark or trade name was originally descriptive and thus is not distinctive, while another line of cases extends broad protection where the trade-mark or trade name is arbitrary and fanciful. Consideration is also given in many cases as to whether the trade-mark or trade name is "strong" or "weak." In other cases the matter of prime concern is whether competition actually existed between the parties in the dispute.

Whether a claim based on unfair competition exists depends upon the peculiar facts of each case. Sinko v. Snow-Craggs Corp., 7 Cir., 105 F.2d 450, 452. Generally speaking, however, it can be said that in all cases of unfair competition it is the principles of old-fashioned honesty which are controlling. Radio Shack Corp. v. Radio Shack, Inc., 7 Cir., 180 F.2d 200, 206. Also we must follow the rule stated by the Supreme Court in Pecheur Lozenge Co., Inc. v. National Candy Co., Inc., 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103; Fashion Originators' Guild of America, Inc., v. Federal Trade Commission, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949, and apply the appropriate State law, which in this case is that of Illinois.

The word "Jewel" has been widely used in connection with various products. It has been registered at the U. S. Patent Office 25 times by others than plaintiff on food products, 93 times on other classes of goods, and 67 times in combination with other words. In its usual and ordinary connotation "Jewel" refers to a precious stone, gem or ornament. In a secondary or figurative sense, it stands for high quality, merit or value.

When plaintiff adopted the name "Jewel" as a part of its corporate name, and when plaintiff and defendant used the word "Jewel" as a part of the name by which they designated their retail stores, they of course did not contemplate operating jewelry stores. On the other hand "Jewel" is not a coined or fanciful name, such as "Kodak," "Philco," or "Budweiser."

In trade-mark cases courts have pointed out the weakness of "Jewel" as a mark. In Pro-phy-lac-tic Brush Co. v. Jordan Marsh Co., 1 Cir., 165 F.2d 549, at page 552, involving the marks "Jewelite" and "Gemlite," the court said: "Furthermore both marks are weak. The words 'gem' and 'jewel' equally share the connotation of value and beauty combined, and the suffix 'lite' is in common use as the equivalent of 'lith' to denote a mineral or mineral like substance, as in cryolite or bakelite. * * * Their obvious connotations of beauty and value make them as weak as the marks 'Blue Ribbon' and 'Gold Seal' with their obvious connotations of prize-winning quality."

In American Steel Foundries v. Robertson, Commissioner, 269 U.S. 372, at page 383, 46 S.Ct. 160, at page 163, 70 L.Ed. 317, the court cites, apparently with approval, a statement from the Commissioner of Patents: " 'The word involved in this case is one of a large class of words which have for a great many years been much used because of their peculiarly suggestive meaning. For other examples there are the words "Acme," "Anchor," "Champion," "Eureka," "Excelsior," "Ideal," "*Jewel*," "Liberty," * * *. It would be a serious matter if the law actually permitted anyone who chose to do so to organize a series of corporations with names containing these words, respectively and thereupon virtually withdraw these words from public use as trade-marks and monopolize them, by preventing their registry as such.' " (Emphasis added.)

To illustrate the narrow scope which courts have accorded to words in common use by many manufacturers on a wide variety of products, the court in Arrow Distilleries, Inc., v. Globe Brewing Co., 4 Cir., 117 F.2d 347, held that the owners of the trade-mark "Arrow" as applied to liqueurs and cordials were not entitled to an injunction against the use of "Arrow" as a name to designate beer and ale. The court cited France Milling Co. v. Washburn-Crosby Co., Inc., 2 Cir., 7 F.2d 304, where the words "Gold Medal" as applied to straight wheat

flour were held not infringed by the words "Gold Medal" as applied to prepared pan-cake and buckwheat flour. In the Arrow case the court, quoting from the France Milling Co. case, said 117 F.2d at page 350: "'One who devises a new, strange, "catching" word to describe his wares may and often has by timely suit prevented others from taking his word or set of words to gild the repute of even wholly different goods * * *; but one who takes a phrase which is the common place of self-praise like "Blue Ribbon" or "Gold Medal" must be content with that special field which he labels with so undistinctive a name.'"

█ We recognize that the judgment of the district court was based upon unfair competition. However, the common law of trade-marks is but a part of the broader field of unfair competition. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 413, 36 S.Ct. 357, 60 L.Ed. 713. The Supreme Court has said, "The facts supporting a suit for infringement and one for unfair competition are substantially the same." Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 196, 83 L.Ed. 195.

█ The key word of the trade name adopted by plaintiff is "Jewel" which has some of the characteristics of a generic or descriptive word, as distinguished from a coined or fanciful word; but even if the word "Jewel" were considered as a descriptive term, that in itself would not be sufficient to invalidate it as a trade-name. Steem-Electric Corp. v. Herzfeld-Phillipson Co., 7 Cir., 118 F.2d 122. If a generic term has acquired a secondary meaning, late users must adopt means to avoid public deception. Radio Shack Corp. v. Radio Shack, Inc., supra, 180 F.2d at page 206; General Finance Loan Co. v. General Loan Co., 8 Cir., 163 F.2d 709. The law in Illinois is in accord with the general rule. Lady Esther, Ltd. v. Lady Esther Corset Shoppe, Inc., 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6; Auto Parts Co. v. Silverstein, 211 Ill.App. 436. In the latter case the court held that a latecomer, regardless of fraudulent intent or actual injury, owes the duty of adopting affirmative precautions sufficient to make confusion in the use of a similar trade name improbable. In that case the use by the latecomer of the trade name "Auto Sales and Parts Company" was held to be unfair competition where the older company operated under the trade name "Auto Parts Company."

██ The district court found that the word "Jewel" has acquired a secondary meaning in connection with plaintiff's retail grocery business in Chicago and suburbs. It is without dispute that plaintiff used the word "Jewel" in the trade name of its stores at least eight years before the defendant used it in the name of his stores. On the record before us we cannot say that the district court's findings as to secondary meaning are clearly erroneous. We, therefore, approve the findings of fact of the district court in this respect and pass to the question whether defendant adopted reasonable precautions to avoid confusion.

Although defendant's stores dealt primarily in dairy products and had various distinguishing characteristics hereinbefore mentioned, yet defendant sold goods of the same descriptive properties as similar items which plaintiff sold in its stores.

█ Defendant's practice of establishing stores in the vicinity of plaintiff's stores, and in one case in the same building where plaintiff had a store for two years, in itself is sufficient to show that defendant did not take reasonable precautions to avoid confusion. Under the circumstances the district court was justified in enjoining defendant from using the word "Jewel" in his trade name.

█ The district court made detailed findings of fact and concluded that as a matter of law plaintiff was entitled to an injunction restraining defendant "from the use of the word Jewel on any store he operates in connection with the retail business of distributing or selling food or dairy products in Chicago and its suburbs." The court's conclusion of law was properly limited and confined to the relief to which plaintiff was entitled under the evidence. But the restraint set forth in the decree is much broader than that stated in the court's conclusion of law, for defendant is re-

strained "from using the word 'Jewel' * * * in, about and in connection with, the conduct and operation of his (defendant's) business * * *." Also the area is enlarged to include the entire State of Illinois.

As we interpret the decree it is broad enough to restrain defendant from selling ice cream when the name "Jewel" is used as any part of the label. Thus any right to that name acquired by defendant for use on his ice cream is denied, although defendant was selling ice cream under that name for five years before plaintiff sold any ice cream at all, and for six years before plaintiff used the word "Jewel" on its ice cream.

Comparatively speaking, the sale of dairy products was and is incidental in plaintiff's business, as only slightly more than 10% of its income derives from that source. By contrast defendant's business chiefly has been the sale of dairy products and ice cream. On his stores defendant customarily has neon signs in the outline of a milk jug. In the window are neon signs depicting an ice cream cone and reading, "Ice Cream." Signs reading, "We Make Our Own Ice Cream," are also prominently displayed.

In the matter of the sale of ice cream under the name "Jewel" it was the plaintiff who was the latecomer. Ice cream is not of the same descriptive properties as dairy products, such as butter, cheese, milk and cream. As pointed out in Hutchinson Ice Cream Co. v. State of Iowa, 242 U.S. 153, 158, 37 S.Ct. 28, 61 L.Ed. 217, under some formulas ice cream is made without using either cream or milk. The term "dairy or other farm products" as used in the Wisconsin "Ton-mile tax" statute, Laws 1931, c. 454, was held not to include malted, condensed, evaporated or powdered milk, or ice cream. State ex rel. Wisconsin Allied Truck Owners Ass'n v. Public Service Commission, 207 Wis. 664, 679, 680, 683, 242 N. W. 668.

In Consumers Petroleum Co. v. Consumers Co. of Illinois, 7 Cir., 169 F.2d 153, 155, this court held that the defendant, engaged in the sale of solid fuels under the name of "Consumers Company of Illinois," did not acquire a property right in the trade name "Consumers" as applied to fuel oil, where it did not commence selling fuel oil until after the plaintiff had commenced selling fuel oil under the name of "Consumers Petroleum Company." In California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir., 166 F.2d 971, this court refused to enjoin the use of the trade-mark "Sunkist" in the sale of bakery products including raisin bread although the plaintiff owned and had used the trade-mark covering fruits, including raisins.

The only product sold by defendant to which he applied the word "Jewel" was ice cream. On the cartons containing ice cream appeared the words "Jewel Fine Ice Cream." In our opinion, by reason of his prior public use, extending for a period of more than five years, the defendant is entitled to use the term "Jewel Fine Ice Cream," on ice cream cartons sold in his stores or distributed by him. The defendant will be required, however, to eliminate and cease to use the word "Jewel" from the identifying phrase on such ice cream cartons, to wit, "Jewel Milk Stores, Cicero, Illinois," as a necessary result of the restraint, properly imposed, on defendant in connection with the use of the word "Jewel" as his trade name and as his store name.

The injunction will be modified so as to preserve to the defendant the right to sell ice cream under the words "Jewel Fine Ice Cream," but without referring to "Jewel" as any part of defendant's trade name. In all other respects the judgment containing the injunction will be affirmed. Costs will be assessed two-thirds to be paid by defendant and one-third by the plaintiff.

Modified and affirmed.

On Petition for Rehearing.

Defendant's petition for rehearing insists that the injunction as modified in our opinion filed December 5, 1950, is too broad. His contentions were heretofore duly considered, and were disposed of in our opinion, except possibly in one respect.

Defendant contends the injunction is so broad that he would be prohibited from selling products such as Swift's Jewel oleo margarine, and the products of the Jewel

Paint and .Varnish Company, and that he would not be permitted to buy or sell other products on which the word "Jewel" has been registered as a trade-mark. We do not think that the injunction as modified can reasonably be interpreted as defendant contends.

The injunction as modified, although couched in general terms, is not aimed at defendant's handling in the ordinary course of business the products of other persons or concerns who use the word "Jewel" as part of their trade name or on their products where the wrappers or cartons containing such products give appropriate notice of the origin or sponsorship of such persons or concerns. Let the wording of the injunction be modified to expressly exempt the defendant from such restrictions.

It is so ordered, and the petition for rehearing is denied.