BORDEN COMPANY, Plaintiff,

v.

L. B. LIDDY, Secretary of Agriculture of
the State of Iowa, Defendant.

Civ. No. 4–1158.

United States District Court
S. D. Iowa,
Central Division.

Dec. 15, 1961.

Maxwell A. O'Brien and Samuel G.
O'Brien (Parrish, Guthrie, Colflesh &
O'Brien), Des Moines, Iowa, for plaintiff.

Evan Hultman, Atty. Gen., and
George E. Wright and William Yost,
Asst. Attys. Gen., for defendant.

STEPHENSON, Chief Judge.

Plaintiff, The Borden Company (hereinafter referred to as Borden) brought

suit against the defendant, L. B. Liddy, (hereinafter referred to as Liddy) Secretary of Agriculture of the State of Iowa, seeking an injunction and requesting declaratory judgment pursuant to Title 28, Section 2201, U.S.C. Jurisdiction is based upon Title 28, Sec. 1332, U.S.C. Borden is a New Jersey Corporation having its principal place of business in New York, New York. Liddy is a citizen of Iowa.

This controversy arose from the variation between the Iowa statute [1] providing that ice cream shall contain "not less than twelve percent by weight of milk fat and not less than twenty percent by weight of total milk solids," and the regulation issued by the Commissioner of Food and Drugs under authority delegated to him by the Secretary of Health, Education and Welfare pursuant to the authority provided in the Federal Food, Drug, and Cosmetic Act, Title 21, §§ 341, 371(e), U.S.C.A., which provides that "The kind and quantity of optional dairy ingredients used, as specified in paragraph (c) of this section, and the content of milk fat and nonfat milk solids therein, are such that the weights of milk fat and total milk solids are not less than 10 percent and 20 percent, respectively, of the weight of the finished ice cream;" [2] In other words Iowa requires that ice cream contain a minimum of 12 percent by weight of milk fat whereas the federal regulation requires

1. Iowa Code Section 190.1 (1958), I.C.A. provides:

"Definitions and standards. For the purpose of this chapter [Iowa Code chapter 190] the following definitions and standards of food are established:

* * * * *

"34. *Ice Cream.* Ice cream is a pure clean frozen product made from ice cream mix and a harmless flavoring. It shall contain not less than twelve percent by weight of milk fat and not less than twenty percent by weight of total milk solids, except where fruit, fruit juice, or both fruit and fruit juice, nuts, cocoa or chocolate, or cocoa and chocolate syrup, maple syrup, cakes or confections are used for the purpose of flavoring; then it shall contain not less than ten percent by weight of milk fat and not less than sixteen percent by weight of total milk solids."

Iowa Code Section 190.3 (1958), I.C.A. provides:

"Food adulterations. For the purposes of this chapter any food shall be deemed to be adulterated:

* * * * *

"3. If any valuable constituent has been removed to any extent.

* * * * *

"10. If it does not conform to the standards established by law or by the department."

Iowa Code Section 189.14 (1958), I.C.A. provides:

"Mislabeled articles. No person shall knowingly introduce into this state, solicit orders for, deliver, transport, or have in his possession with intent to sell, any article which is labeled in any other manner than that prescribed by this title for the label of said article when offered or exposed for sale, or sold in packaged or wrapped form in this state."

Iowa Code Section 189.15 (1958), I.C.A. provides:

"Adulterated articles. No person shall knowingly manufacture, introduce into the state, solicit orders for, sell, deliver, transport, have in his possession with the intent to sell, or offer or expose for sale, any article which is adulterated according to the provisions of this title" [Iowa Code Chapters 189–216]

Iowa Code Section 189.11 (1958), I.C.A. provides in part:

"Labeling of mixtures—federal requirements.

* * * * *

"Notwithstanding any other requirements of this chapter, foods and food products labeled in conformance with the labeling requirements of the government of the United States shall be deemed to be labeled in conformance with the laws of the state of Iowa."

Iowa Code Section 189.19 (1958), I.C.A. provides:

"Penalty. Unless otherwise provided, any person violating any provision of this title, or any rule made by the department and promulgated under the authority of said department, shall be punished by a fine of not less than ten dollars nor more than one hundred dollars or by imprisonment in the county jail not to exceed thirty days, and on a third conviction for the same offense may be restrained by injunction from operating such place of business."

2. 21 C.F.R., Sec. 20.1 (Supp.1961).

a minimum of 10 percent by weight of milk fat. Iowa contends that Borden must comply with the Iowa law as to the manufacture and sale of ice cream within the state whereas Borden contends compliance with the federal regulation is sufficient.

Borden is engaged in the manufacture, processing, sale and distribution at wholesale of ice cream to customers in the States of Iowa, Illinois, Wisconsin, Missouri, Minnesota and others. It has manufacturing plants in Chicago, Illinois, Milwaukee, Wisconsin and Mason City, Iowa.

The parties have stipulated in part as follows:

"The Borden Company ships 1,300,000 gallons of ice cream per year into the State of Iowa from its Wisconsin plant and ships 940,000 gallons of its ice cream per year into the State of Iowa from its Chicago, Illinois pant. The Mason City plant manufactures, sells and distributes approximately 1,600,000 gallons of ice cream a year, of which about 1,500 gallons are shipped from Mason City, Iowa into the State of Missouri, approximately 60,000 gallons into the State of Minnesota and approximately 25,000 gallons into the State of Illinois."

It has been further stipulated to the effect that the plaintiff's three plants are not equipped with the same manufacturing equipment; that to comply with Iowa law rather than the federal regulation would require additional investment and result in a number of cost increases to the plaintiff, the total of which would amount to $364,000 per year; that if all Iowa requirements were made in Iowa, the plaintiff would be required to build a new plant in Iowa which would require an investment of $2,000,000 and result in duplication of manufacturing facilities, the cost of

which would be approximately $110,000 per year.

It has also been stipulated that Liddy, in his capacity as Secretary of Agriculture has made demand upon Borden to comply with section 190.1(34) of the Code of Iowa, I.C.A., and threatens to enforce the provisions of section 189.19 against Borden, its officers and employees unless it immediately complies with section 190.1(34) "in regard to ice cream manufactured by The Borden Company outside of the State of Iowa for sale in Iowa and ice cream manufactured by The Borden Company in Iowa for delivery and sale in adjoining states in interstate commerce."

It is apparent that there are two phases of this controversy. The first is whether the federal regulation prevails over the Iowa statutes in regard to ice cream manufactured outside the State of Iowa and shipped into Iowa for sale. The second concerns the effect of the regulation upon the ice cream manufactured at the plaintiff's Mason City, Iowa plant and shipped into Illinois, Missouri and Minnesota.

The complaint was filed on July 7, 1961, at which time a temporary restraining order was issued enjoining Liddy from enforcing the Iowa statute. It has since been extended by agreement of the parties until further order of the court. A stipulation of facts was filed August 29, 1961, following which the cause was submitted on its merits on written briefs. At the court's request, oral argument was held on November 30, 1961. At that time Liddy conceded that the second phase of the controversy was not an issue in view of Iowa Code Section 189.26[3] (1958), I.C.A., and that Borden, by complying with this statute could manufacture at its Mason City plant ice cream with less than twelve per cent milk fat for shipment into other states. As a result the court is only concerned with the question of ice cream

3. "Goods for sale in other states. Any person may keep articles specifically set apart in his stock for sale in other states which do not comply with the provisions of this title as to standards, purity, or labeling."

manufactured outside of Iowa and shipped into Iowa for sale.

Borden contends it is entitled to relief because all we are concerned with in this lawsuit is a "labeling" statute; that in view of Iowa Code Sec. 189.11 [4] which provides that any food product labeled in accordance with federal requirements is deemed labeled in conformance with the law of Iowa, Borden is not in violation of Iowa law. If limited to this statute plaintiff's argument is correct, but this argument tends to ignore the effect of Iowa Code Sec. 189.15 [5] which prohibits the sale of adulterated food.

■ The State of Iowa specifically prohibits mislabeling.[6] Plaintiff may meet federal requirements in this regard and be deemed in conformance with any labeling laws of Iowa. However, merely labeling an article correctly does not satisfy the Iowa law regarding adulterated food. It is in this respect plaintiff's argument fails. Accepting all of plaintiff's contentions concerning the proper labeling of food products, still, plaintiff would run afoul of Sec. 189.15 which prohibits the sale of adulterated food, if it sells ice cream with less than 12 per cent milk fat by weight. Plaintiff contends that both Secs. 189.14 and 189.15 were interpreted as only a "labeling law" in State v. Hutchinson Ice Cream Co., 1914, 168 Iowa 1, 147 N.W. 195, affirmed, 1916, 242 U.S. 153, 37 S.Ct. 28, 61 L.Ed. 217. At the time of the Hutchinson case sections 189.14 and 189.15 were combined in section 4999–a20, which provided as follow:

"Manufacture and sale of adulterated foods prohibited. No person, firm or corporation, by himself, officer, servant or agent, or as the officer, servant, or agent of any other person, firm or corporation, shall manufacture or introduce into the state, or solicit or take orders for delivery, or sell, exchange, deliver or have in his possession with the intent to sell, exchange or expose or offer for sale or exchange, any article of food which is adulterated or misbranded, within the meaning of this act. Provided that none of the penalties set forth in this act shall be imposed upon any common carrier for introducing into the state, or having in its possession, any adulterated or misbranded articles of food, where the same were received by said carrier for transportation in the ordinary course of its business and without actual knowledge of the adulteration or misbranding thereof. Provided that any manufacturer, wholesaler or jobber may keep goods specifically set apart in his stock for sale in other states, which might otherwise be in violation of the provisions of this act. (31 G.A., ch. 166, § 6.)"

Neither Hutchinson decision stated that this statute related only to labeling as Borden contends. As is true today, the statute prohibited the sale of misbranded (now mislabeled) *and* adulterated food. The legislature has since made this even more clear by dividing section 4999–a20 into two sections, one aimed at mislabeled articles; the other adulterated articles. Therefore Borden's contention that compliance with federal labeling requirements constitutes conformance with the Iowa law prohibiting the sale of adulterated food cannot be sustained.

Borden further contends it is entitled to relief for two additional reasons. (1) that the federal government "has preempted the field of labeling as it relates to frozen desserts, and, therefore, Federal regulations and statutes apply rather than the State laws." (2) that "enforcement of the Iowa statute relating to labeling of ice cream would constitute an undue burden on interstate commerce."

The court has already determined that the Iowa law defining ice cream is

---

4. See footnote 1 supra.

5. See footnote 1 supra.

6. Iowa Code Section 189.14 (1958), I.C.A. See footnote 1 supra.

more than a labeling statute. It prescribes the standard for ice cream, violation of which constitutes adulteration. However, the court will consider whether the federal government has pre-empted the field by establishing a minimum standard for ice cream, and in addition, whether the establishment and enforcement of the Iowa standard is an undue burden on interstate commerce.

Borden bases its pre-emption argument on the ground that the ice cream industry is today operated on a large interstate scale as opposed to the rather limited local nature of its operations a few years ago and that to have fifty different state regulations governing the standards for these products would unreasonably and greatly restrict the economic development of the food industry, leading to confusion, inefficiency and a burden on the natural growth of the industry.

On the other hand, Liddy contends that the regulation promulgated by the Commissioner of Food and Drugs under the Food, Drug, and Cosmetic Act does not render the Iowa law inapplicable to retail sales in Iowa. Liddy further contends that even though Congress has the power under the commerce clause to legislate in this area, the states can in the exercise of their police power, prohibit the sale of adulterated food within their borders; that in effect, both governmental units may act, as they have done here. Defendant specifically denies the federal government pre-empted this field.

■ In determining whether pre-emption has transpired, "the intent to supersede the exercise by the state of its police power as to matters not covered by the Federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress, fairly interpreted, is in actual conflict with the law of the state." Huron Portland Cement Co. v. City of Detroit, 1960, 362 U.S. 440, 443, 80 S.Ct. 813, 816, 4 L.Ed.

2d 852. Savage v. Jones, 1912, 225 U.S. 501, 533, 32 S.Ct. 715, 56 L.Ed. 1182.

■ In addition, the findings of fact published in 25 Fed.Reg. 7126–7138 indicate the regulation in question was not intended to supersede the several state laws controlling the milk fat content of food sold as ice cream within those states. Examination of the findings of fact of the Commissioner of Food and Drugs indicates that the federal regulation was intended to be only a *minimum* requirement for milk fat content. Nothing therein indicates any intention to invalidate the laws of nineteen states which were listed in 25 Fed.Reg. 7132 as requiring a slightly higher milk fat content for ice cream sold within their borders.

Finding of fact #44 states in part:

"A sufficient quantity of milk fat is necessary to impart certain properties to ice cream that serve to differentiate ice cream from less rich frozen foods, such as ice milk and sherbets. * * *

"In 1951 the requirements of various States for minimum milk fat content of plain ice cream were as follows:

\* \* \* \* \* \*

"Minimum requirement of 12 percent milk fat: Colorado, Delaware, Idaho, Illinois, Iowa, Maine, Maryland, Michigan, Minnesota, Nebraska, New Mexico, North Dakota, Oregon, South Dakota, Utah.

"Minimum requirement of 13 percent milk fat: Wisconsin.

"Minimum requirement of 14 percent milk fat: Nevada, New Hampshire, Vermont.

"In all States ice cream with a milk fat content higher than the minimum required by State law are manufactured and sold. A survey made in 1947 by the International Association of Ice Cream Manufacturers among wholesale ice cream manufacturers indicated that about two-thirds of the so-called vanilla ice cream (including unflavored ice

cream) made in the United States had a fat content of 12 percent or over. \* \* \* "

Finding of fact #45 provides in part:

"There is no question about the desirability of an adequate quantity of nonfat milk solids in ice cream. Due to the relatively low cost of nonfat milk solids in comparison with milk fat and to the fact that an increase in the quantity of nonfat milk solids tends to compensate in some ways for lowering the fat content of ice cream, there has been no serious problem from failure of ice cream manufacturers to use sufficient nonfat milk solids. *It is therefore necessary to fix a minimum fat content to insure real richness in ice cream, and it is desirable to set a minimum limit on total milk solids.* (Emphasis added.)

"In fixing such a *minimum* limit for fat and total milk solids, it is in the interest of consumers to consider the nutritive values of ice creams of varying compositions. (Emphasis added.)

\*     \*     \*     \*     \*     \*

"It will promote honesty and fair dealing in the interest of consumers to provide that ice cream meeting *minimum* standards will have a fat and total milk solids content such that a reasonable degree of richness will be furnished while providing an optimum nutritive value. It is concluded that a requirement for a *minimum* fat content of 10 percent in plain ice cream coupled with a requirement of not less than 20 percent milk solids is likely to achieve these objectives. \* \* \* " (Emphasis added).

It is clear from the findings that the federal regulation was not intended to be more than a minimum standard to insure certain richness in ice cream to protect the consumer with proper nutritive values. In addition, there is nothing in the findings that indicates any necessity for uniformity except to the extent a

minimum standard is required, nor that any State requirement of a fat content higher than 10 percent would be prohibited. Quite the contrary appears in finding #47 which provides in part:

"The requirements of 20 percent total milk solids with milk fat levels equal to or *slightly above* the minimum of 10 percent provides for adequate nonfat milk solids (see finding 45)". (Emphasis added.)

Borden's contention that the federal government has pre-empted the field by establishing a minimum standard for ice cream cannot be sustained.

■ Borden also has contended that the Iowa law constitutes an undue burden upon interstate commerce. However, merely because Congress has the power under the commerce clause to legislate in this area does not mean the state cannot, in the exercise of their police powers prohibit the sale of adulterated food within their borders. In Savage v. Jones, 1912, 225 U.S. 501, at page 525, 32 S.Ct. 715, at page 722, 56 L.Ed. 1182, the Supreme Court stated, "But when the local police regulation has real relation to the suitable protection of the people of the state, and is reasonable in its requirements, it is not invalid because it may incidentally affect interstate commerce, provided it does not conflict with legislation enacted by Congress pursuant to its constitutional authority." As was indicated above, the findings of fact indicate that there was no intention to invalidate the state laws requiring more than 10 percent milk fat content in ice cream and thus there is no conflict between the Iowa and federal requirements in this regard.

■ More recently the Supreme Court stated in Huron Portland Cement Co. v. City of Detroit, 1960, 362 U.S. 440, 443–444, 80 S.Ct. 813, 816, 4 L.Ed. 2d 852:

"In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when 'conferring upon Congress

the regulation of commerce, * * * never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution.' [Citing cases.]"

While it is true, as Borden contends, that a state may not under the guise of exercising its police power, impose burdens upon or discriminate against interstate commerce, McDermott v. Wisconsin, 1913, 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 750, what conduct constitutes such an interference with acts of Congress that it must yield, is accordingly one of fact.

Borden urges that Kansas Packing Co. v. City of New York, 1953, 127 N.Y. S.2d 107, 204 Misc. 1077, modified and affirmed 1954, 131 N.Y.S.2d 351, 284 App.Div. 398, affirmed 1955, 309 N.Y. 696, 128 N.E.2d 411, is controlling here. However, in that case the New York City ordinance made it unlawful to bring into the city or to have, keep, sell or offer to sell *any* processed beef if it contained added water greater than ten percent of the weight of the meat, whereas the federal regulation in question permitted the curing of beef briskets resulting in an increase in the weight in the uncured product up to twenty percent. The New York courts held this local ordinance conflicted with federal law as far as interstate commerce was concerned and was therefore unconstitutional.

 However, nothing in the Iowa adulterated food statute forbids the sale of Borden's frozen dessert product containing only 10 percent milk fat. It merely prohibits the sale of said product as the food "ice cream." State v. Hutchinson Ice Cream Co., 1914, 168 Iowa 1, 147 N.W. 195, affirmed, 1916, 242 U.S. 153, 37 S.Ct. 28, 61 L.Ed. 217.

The Iowa statute in question [7] does not discriminate against interstate commerce as such. The court is of the opinion that after considering all the facts and circumstances the provisions of Iowa Code Sec. 189.15, I.C.A. are not so burdensome upon interstate commerce as to be violative of the commerce clause of the federal Constitution.

This memorandum shall constitute the Court's findings of fact and conclusions of law, as provided by Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.

Judgment will be entered dismissing the complaint and the temporary restraining order will be vacated.

---

7. Iowa Code Section 189.15 (1958), I.C.A.