The **BORDEN COMPANY**, Appellant,

v.

**L. B. LIDDY**, Secretary of Agriculture of the State of Iowa, Appellee.

No. 16961.

United States Court of Appeals
Eighth Circuit.

Nov. 13, 1962.

Rehearing Denied Dec. 10, 1962.

872

Samuel G. O'Brien, Des Moines, Iowa, Maxwell A. O'Brien, Des Moines, Iowa, and Joseph A. Greaves and William N. Braun, Chicago, Ill., on the brief, for appellant.

John M. Creger, Asst. Atty. Gen., Des Moines, Iowa, Evan Hultman, Atty. Gen., Iowa and George E. Wright, William J. Yost and David E. Byers, Assts. to Atty. Gen., Des Moines, Iowa, on the brief, for appellee.

Before VOGEL and VAN OOSTER-HOUT, Circuit Judges, and VAN PELT, District Judge

VOGEL, Circuit Judge.

The Borden Company, plaintiff-appellant, brought this action against L. B. Liddy, Secretary of Agriculture of the State of Iowa, defendant-appellee, seeking a declaratory judgment. It also asked for a temporary restraining order and preliminary and final injunctions. The controversy arises out of a difference between state and federal laws establishing the milkfat content of ice cream.

Borden is engaged in the manufacturing, processing, sale at wholesale and distribution of ice cream in bulk in interstate commerce through and into various states, including Iowa. Liddy, as Secretary of Agriculture of the State of Iowa, is charged with the duty of administering and enforcing those provisions of the law of Iowa hereinafter referred to.

Prior to July 1, 1961, there was no federal regulation establishing definitions and standards of identity for ice cream and other frozen desserts. The various states and the District of Columbia by legislation or regulation fixed minimum standards for milkfat content in ice cream. Four states and the District of Columbia required a minimum of 8%. Twenty-five states required a minimum of 10%. Fifteen states, including Iowa, required a minimum of 12%. One state required a minimum of 13%, and three states a minimum of 14%. 25 Fed. Reg. 7132 F.F. '#44.

On July 1, 1961, following extensive hearings, there went into effect a regulation issued by the Commissioner of Foods and Drugs under authority delegated to him by the Secretary of Health, Education and Welfare in accordance with the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. §§ 341, 371(e), which regulation provided for a minimum milkfat content in ice cream of 10%[1] as opposed to Iowa's requirement of 12%.[2]

---

[1]. Section 20.1 of the Regulations (21 C.F.R.), among other things, provides as follows:

"(a) Ice cream is the food prepared by freezing, while stirring, a pasteurized mix composed of one or more of the optional dairy ingredients specified in paragraph (c) of this section, sweetened with one or more of the optional sweetening ingredients specified in paragraph (d) of this section. * * *. The kind and quantity of optional dairy ingredients used, as specified in paragraph (c) of this section, and the content of milk fat and nonfat milk solids therein, are such that the weights of milk fat and total milk solids are not less than 10 percent and 20 percent, respectively, of the weight of the finished ice cream; * * *."

[2]. The Code of Iowa 1958 provides:
"189.14 Mislabeled articles

"No person shall knowingly introduce into this state, solicit orders for, deliver, transport, or have in his possession with intent to sell, any article which is labeled

It was stipulated by the parties:

"The defendant, L. B. Liddy, as Secretary of Agriculture, in his official capacity, has made demand upon this plaintiff that it comply with the aforesaid provisions of the Statutes of Iowa, specifically Section 190.1(34), Code of Iowa 1958, and threatens to enforce the provisions of Section 189.19, Code of Iowa 1958, against this plaintiff, its officers and employees unless the plaintiff immediately complies with Section 190.1(34) of the Iowa Statutes aforesaid in regard to ice cream manufactured by The Borden Company outside of the State of Iowa for sale in Iowa and ice cream manufactured by The Borden Company in Iowa for delivery and sale in adjoining states in interstate commerce."

Borden's complaint alleged that:

" * * * to enforce the aforesaid penalties of the Iowa Law against this Plaintiff by reason of its compliance with the Federal Statutes and regulations, *is a wrongful interference with the exclusive power of Congress over interstate commerce,* illegal, arbitrary, *discriminatory and in conflict with the statutes and Constitution of the United States* and the aforesaid rules and regulations promulgated thereunder and deny to the Plaintiff the due process and equal protection of the law, *in violation of Article I, Section 8 and Amendments V and XIV of the Constitution of the United States."* (Emphasis supplied.)

Borden asked the United States District Court for the Southern District of Iowa for a temporary restraining order and a preliminary and permanent injunction " * * * restraining and enjoining them [Liddy and all officials, agents, servants and employees] from enforcing the provisions of Section 190.1(34) Code of Iowa 1958 and the rules and regulations of the Secretary of Agriculture of the State of Iowa * * *." On July 7, 1961, the District Court granted Borden's request for a temporary restraining order. Subsequently the matter was tried by the District Judge upon an agreed stipulation of facts. On December 16, 1961, the District Judge denied the ultimate relief asked for by Borden because:

"The Iowa statute in question does not discriminate against interstate commerce as such. The court is of the opinion that after considering all the facts and circumstances the provisions of Iowa Code Sec. 189.-15, I.C.A., are not so burdensome upon interstate commerce as to be violative of the commerce clause of the federal Constitution."

See Borden Company v. Liddy, D.C.S.D. Ia., 1961, 200 F.Supp. 221.

A three-judge court was not asked for by the parties nor convened by the District Judge in order to pass on the application for the preliminary and perma-

in any other manner than that prescribed by this title for the label of said article when offered or exposed for sale, or sold in package or wrapped form in this state."

"*189.15 Adulterated articles*

"No person shall knowingly manufacture, introduce into the state, solicit orders for, sell, deliver, transport, have in his possession with the intent to sell, or offer or expose for sale, any article which is adulterated according to the provisions of this title."

"*189.19 Penalty*

"Unless otherwise provided, any person violating any provision of this title, or any rule made by the department and promulgated under the authority of said department, shall be punished by a fine of not less than ten dollars nor more than one hundred dollars or by imprisonment in the county jail not to exceed thirty days, and on a third conviction for the same offense may be restrained by injunction from operating such place of business."

Section 190.1, Code of Iowa 1958, I.C.A., provides in part as follows:

"*34. Ice cream.* Ice cream is a pure clean frozen product made from ice cream mix and a harmless flavoring. It shall contain not less than twelve percent by weight of milk fat and not less than twenty percent by weight of total milk solids, except * * *."

nent injunctions. In failing to call a three-judge court and in passing upon the request for a preliminary and permanent injunction, we believe the District Judge overlooked the provisions of 28 U.S.C.A. § 2281:

> "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

Borden's complaint alleges that the United States, by reason of its passing the regulations supra, has "preempted, assumed and exercised its full and complete jurisdiction and control over the manufacture, distribution, labeling and sales in interstate commerce of frozen desserts, including ice cream" and that Liddy's threat to enforce the law of Iowa supra and invoke the penalties provided therefor against Borden is a challenge to both the Supremacy Clause of the Constitution and the Commerce Clause as well.

It is true that some cases have exempted from the operation of § 2281 attacks upon a statute based solely upon federal pre-emption. The reasoning of such cases is that only an unconstitutional result is alleged and not unconstitutionality per se, and that pre-emption involves only the interpretation of a federal statute. See Penagaricano v. Allen Corporation, 1 Cir., 1959, 267 F.2d 550; Board of Trade of City of Chicago v. Illinois Commerce Commission, 7 Cir., 1946, 156 F.2d 33, reversed in part on other grounds (1947), 331 U.S. 247, 67 S.Ct. 1160, 91 L.Ed. 1468; Cloverleaf Butter Co. v. Patterson, 5 Cir., 1941, 116 F.2d 227, reversed on other grounds,

315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754; Pennsylvania Greyhound Lines v. Board of Public Utility Com'rs, D.N.J., 1952, 107 F.Supp. 521, 525; Farmers' Gin Co. v. Hayes, W.D.Okl., 1943, 54 F. Supp. 43. The rationale of these cases would seem to be seriously questioned by Justice Frankfurter in Kesler v. Department of Public Safety, etc., of Utah, 1962, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed. 2d 641, where he states, at page 156 of 369 U.S. at page 810 of 82 S.Ct.:

> " * * * This was so heard [by a three-judge court] and appeal was properly brought directly here, unless invalidation of a state statute by virtue of the Supremacy Clause rests on a different constitutional basis than such invalidation because of conflict with any other clause of the Constitution, at least to the extent of reading such an implied exception into the procedure devised by § 2281. *Neither the language of § 2281 nor the purpose which gave rise to it affords the remotest reason for carving out an unfrivolous claim of unconstitutionality because of the Supremacy Clause from the comprehensive language of § 2281.*" (Emphasis supplied.)

It is unnecessary to determine, however, whether Kesler is now authority for the proposition that where only the Supremacy Clause is involved because of claimed pre-emption, a three-judge court must nevertheless be constituted. Here, in addition to the allegation of pre-emption, Borden has invoked Article I, Section 8, Amendment V and Amendment XIV in contravention of the Iowa statutes.

Campbell v. Hussey, 1961, 368 U.S. 297, 82 S.Ct. 327, 7 L.Ed.2d 299, involved a suit brought by the owners and operators of tobacco warehouses in Georgia to enjoin the Commissioner of Agriculture of the State of Georgia and other state officials from enforcing certain provisions of the Georgia Tobacco Identification Act. Federal regulations required that flue cured tobacco be identified by a blue tag stating the type and grade thereof. Georgia law required Type 14 flue

cured tobacco to be identified by a white tag. A three-judge court was convened and in 189 F.Supp. 54 held that the Georgia law burdened interstate commerce and, additionally, that the federal regulation had pre-empted the field. In affirming, the Supreme Court, in a footnote at page 298 of 368 U.S., at page 327 of 82 S.Ct., had this to say with reference to the jurisdictional question of a three-judge court:

"Of the several infirmities which Georgia's law is alleged to have, only one was reached by the lower court, namely, the constitutionality of the law in light of the requirements of the Commerce Clause. The complaint also challenged the constitutionality of the law on the grounds that it violated both the Equal Protection and the Due Process Clauses of the · Fourteenth Amendment. Plainly· the case was one to be heard by a three-judge court. See Florida Lime [& Avocado] Growers v. Jacobsen, 362 U.S. 73 [80 S.Ct. 568, 4 L.Ed.2d 568]."

■ Query v. United States, 1941, 316 U.S. 486, 62 S.Ct. 1122, 8 L.Ed. 1616, involved a suit to restrain enforcement of a state tax on the purchase and sale of goods at Army post exchanges, upon the grounds that such exchanges are federal instrumentalities and that therefore the state statute imposing the tax was, *as applied to them,* unconstitutional. The Supreme Court stated therein, at page 490 of 316 U.S., at page .1124 of 62 S.Ct.:

"Here a substantial charge has been made that a state statute, as applied to the complainants, violates the Constitution. Under such circumstances, we have held that relief in the form of an injunction can be afforded only by a three-judge court pursuant to § 266.. ·Stratton v. St. Louis S. W. Ry. Co.,

282 U.S. 10 [51 S.Ct. 8, 75 L.Ed. 135]; Ex parte Bransford, 310 U. S. 354, 361 [60 S.Ct. 947, 84 L.Ed. 1249]. And this is not, like Phillips v. United States, 312 U.S. 246 [61 S.Ct. 480, 85 L.Ed. 800], a case in which the state officials threatened to engage in conduct which state law could not reasonably be construed to authorize. The complainants in this case sought interlocutory and permanent injunctions against 'the enforcement, operation, · or execution' of a 'statute of a State'; they sought to restrain the action of officers 'of such State in the enforcement or execution of such statute'; and their attack was based entirely 'upon the ground of the unconstitutionality of such statute.'"

Florida Lime & Avocado Growers v. Jacobsen, 1960, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568,[3] involved a conflict between § 792 of the California Agricultural Code prohibiting the importation and sale in California of avocados containing less than 8% of oil by weight as opposed to Florida Avocado Order No. 69 issued by the United States Department of Agriculture. The Supreme Court held there, at pages 84 and 85 of 362 U.S., at page 575 of 80 S.Ct.:

"To hold that only one judge may hear and decide an action to enjoin the enforcement of a state statute on both constitutional and nonconstitutional grounds would be to ignore the explicit language and manifest purpose of § 2281, which is to provide for a three-judge court whenever an injunction sought against a state statute may be granted on federal constitutional grounds. Where a complaint seeks to enjoin a state statute on substantial grounds of federal unconstitutionality, then even though nonconstitutional grounds of attack are also alleged, we think the case is one

3. Note subsequent trial of this case before a three-judge court in Florida Lime & Avocado Growers v.. Paul, 197 F.Supp. 780, and the Supreme Court's noting

"probable jurisdiction" of an appeal in 368 U.S. 964, 82 S.Ct. 439, 7 L.Ed.2d 394, January 15, 1962.

that is 'required by * * * Act of Congress to be heard and determined by a district court of *three* judges.' 28 U.S.C. § 1253. (Emphasis added.)"

If the determinations of the conflict between state and federal regulations on avocados, as in Florida Lime Growers, and the conflict between state and federal regulations on tobacco identification, as in Hussey, required the convening of three-judge courts for the granting or denial of interlocutory and permanent injunctions, then it would appear to us inescapable that this case, claiming as it does threatened action in violation of the Commerce Clause and the Supremacy Clause, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and in which interlocutory and permanent injunctions were asked, required the same treatment.

 While no three-judge court was requested herein, it was nevertheless the duty of the District Judge, upon receiving an application for a restraining order and preliminary and final injunctions seeking to restrain enforcement and operation of the Iowa statute upon the ground of the unconstitutionality of such statute as it was attempted to be invoked, to himself initiate the necessary procedure for the setting up of a three-judge district court in accordance with 28 U.S.C.A. § 2284. See Aaron v. Cooper, 8 Cir., 1959, 261 F.2d 97, 105, wherein this court stated:

"* * * There is no requirement in § 2284 that the applicant for the injunction must determine the need for a three-judge court and make request therefor and no provision that, if this is not done, there is a lack of judicial jurisdiction. The practical, expediting and procedural nature of the statute suggests to the contrary that the legislative intention was that the district judge to whom an application for an injunction is presented must exercise the responsibility not only of determining whether it is in fact a three-judge case or a single-judge matter but also of taking the necessary action on this basis for enabling the case to be disposed of on its merits."

And as stated by Mr. Chief Justice Hughes in Stratton v. St. Louis S. W. Ry. Co., 1930, 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135, at page 15 of 282 U.S., at page 10 of 51 S.Ct.:

"If an application for an interlocutory injunction is made and pressed to restrain the enforcement of a state statute, or of an administrative order made pursuant to a state statute, upon the ground that such enforcement would be in violation of the Federal Constitution, a single judge has no jurisdiction to entertain a motion to dismiss the bill on the merits. *He is as much without power to dismiss the bill on the merits, as he would be to grant either an interlocutory or a permanent injunction.* His authority is strictly limited to granting, upon proper cause being shown, a temporary restraining order to be effective only pending the determination of the application for an interlocutory injunction. Upon making such an order, it is his duty immediately to call two other judges, as the statute directs, to assist him in hearing and determining that application. Ex parte Northern Pacific Railway Company, 280 U.S. 142, 144 [50 S.Ct. 70, 74 L.Ed. 233]." (Emphasis supplied.)

Even where the parties stipulated to a single-judge court, it was stated in Riss & Co. v. Hoch, 10 Cir., 1938, 99 F.2d 553, 555:

"The requirement of a three-judge court is not a mere privilege or right which the parties may waive. It is a jurisdictional requirement."

See also Idlewild Bon Voyage Liquor Corp. v. Epstein, 1962, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794; Kesler v. Department of Public Safety, etc., of Utah, 1962, 369 U.S. 153, 157, 82 S.Ct. 807, 7

L.Ed.2d 641; Ex parte Metropolitan Water Company of West Virginia, 1911, 220 U.S. 539, 545–546, 31 S.Ct. 600, 55 L. Ed. 575; Priceman v. Dewey, E.D.N.Y., 1949, 81 F.Supp. 557, 558.

Idlewild Bon Voyage Liquor Corp. v. Epstein, supra, involved the question of whether the sale of liquor for export and delivery to international airline passengers at their overseas destinations was illegal under a New York statute. The petitioner asked for a judgment declaring that the statute, as applied, was repugnant to the Commerce Clause, the Export-Import Clause and the Supremacy Clause of the Constitution and for an injunction against its enforcement. A request for a three-judge court under 28 U.S.C.A. §§ 2281, 2284 was denied by the District Judge. The Court of Appeals expressed the opinion that a three-judge court should have been convened but that it was powerless to direct such action. The Supreme Court stated, at page 715 of 370 U.S., at page 1296 of 82 S.Ct.:

"We agree with the Court of Appeals that a three-judge court should have been convened in this case. When an application for a statutory three-judge court is addressed to a district court, *the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute.* Those criteria were assuredly met here, and the applicable jurisdictional statute therefore made it impermissible for a single judge to decide the merits of the case, either by granting or by withholding relief." (Emphasis supplied.)

Since the District Judge here did not consider the necessity for convening a three-judge court, he made no express finding of whether the constitutional issues presented were frivolous. Nevertheless, it fairly appears from his opinion in 200 F.Supp. 221 that he regarded the issues as substantial. We likewise so regard them.

On the question of what a Court of Appeals should do when presented with a situation such as we find here, the Supreme Court said in the Idlewild Bon Voyage Liquor Corp. v. Epstein case, supra, at pages 715–716, 82 S.Ct. at page 1296:

"In the Stratton case it was held that a court of appeals was precluded from reviewing on the merits a case which should have originally been determined by a court of three judges. Stratton does not stand for the broad proposition that a court of appeals is powerless ever to give any guidance when a single judge has erroneously invaded the province of a three-judge court. The Court of Appeals clearly stated its opinion that a court of three judges ought to have been convened to consider this litigation. That view was correct and should have been followed upon the petitioner's renewed motion that such a statutory court be impaneled."

We conclude here that the District Judge had jurisdiction only to enter, upon proper cause being shown, the temporary restraining order referred to and that he was without jurisdiction to entertain and determine Borden's request for a preliminary and permanent injunction. The actions of the District Judge in so doing are set aside. This appeal is dismissed and the case is remanded to the District Court with instructions to initiate the procedure for the setting up of a three-judge district court under the provisions of 28 U.S.C.A. § 2284, which three-judge court will thereafter determine this cause.